Larry McMILLAN, a minor under the age of 21 years, by his parents John and Virginia McMillan, et al., on behalf of each and on behalf of all others similarly situated, Plaintiffs,

Mitchell Garlick, a minor under the age of 21 years, by his mother, Patricia Garlick, Intervenor-Plaintiff,

v.

The BOARD OF EDUCATION OF the CITY OF NEW YORK et al., Defendants.

No. 69 Civ. 3229.

United States District Court, S. D. New York.

Sept. 1, 1971.

---

23. At p. ——.

Reginald Matthews, Queens Legal Services Corp., Jamaica, N. Y., for plaintiff Larry McMillan.

John DeWitt Gregory, Community Action for Legal Services, Inc., New York City, for plaintiff Larry McMillan.

Harold J. Rothwax, MFY Legal Services, Inc., New York City, for intervenor-plaintiff Mitchell Garlick; William Haley, Jamaica, N. Y., John C. Gray, Jr., Brooklyn, N. Y., of counsel.

Louis J. Lefkowitz, Atty. Gen. of the State of New York for defendant Nyquist; Mortimer Sattler, Asst. Atty. Gen., of counsel.

Before KAUFMAN, Circuit Judge, MANSFIELD, Circuit Judge (until June 8, 1971 a District Judge), and WYATT, District Judge.

WYATT, District Judge,

After a history of some length and complexity, this action comes down to an attack on the constitutionality of the $2000 limitation in Section 4407 of the New York Education Law, McKinney's Consol.Laws, c. 16. That section, enacted in 1957, is benevolent and progressive legislation. It authorizes the State Department of Education, under certain circumstances, to contract with private schools for the instruction of handicapped children. The Department is limited, however, to $2000 per year per pupil for such instruction.

There are a number of motions before this Court by a plaintiff, by an intervenor-plaintiff, and by an applicant for intervention. This Court was constituted following reversal by the Court of Appeals (430 F.2d 1145) of a judgment of a single district judge dismissing the action as to the State defendants after declining to request a three-judge court.

We do not reach the merits of the claim that Section 4407 is unconstitutional because we believe that this claim should be first presented in the courts of New York. As hereafter explained, it is possible—if not indeed likely—that as a matter of State law Section 4407 will be interpreted by the New York courts so as to eliminate the constitutional question here raised. This Court, however, retains jurisdiction pending a final determination in the New York courts.

I

The action was commenced on July 23, 1969. There were three infant plaintiffs: Larry McMillan, Steven Fournier, and Teddy Sola. They sued by one or both parents who seem properly authorized as "next friend" (Fed.R.Civ.P. 17(c); see New York CPLR § 1201).

Three of the named defendants may be called "City defendants": The Board of Education of the City of New York; Donovan, then Superintendent of City Schools; and Arnold, Director of Education for the Physically Handicapped in the City Board of Education. The two remaining named defendants may be called "State defendants": The Department of Education of the State of New York and Nyquist, State Commissioner of Education (then Acting Commissioner).

The three plaintiffs are handicapped children; specifically, they have been diagnosed as "brain injured". The action was brought because of their difficulty or inability to obtain an education at public expense.

While the complaint does not to any great extent distinguish between the City and State defendants, it is evident that the controversy with the City defendants is different from that with the State defendants.

Some brain injured children cannot be taught in regular classes and special classes have been set up by the City Board for them. When this action was commenced, the essential controversy with the City defendants was that they had not set up enough special classes and on that account plaintiffs could not be placed in such a class.

The controversy with the State defendants, on the other hand, involved Section 4407 of the New York Education Law, part of an Article relating, among others, to "handicapped children" as there defined (Section 4401(1)). Section 4407 authorizes the State Department of Education "to contract with an educational facility" for instruction of a handicapped child when such child "is not receiving * * * instruction because there are no adequate public facilities for instruction of such a child within this state because of the unusual type of the handicap or combination of handicaps"; the department may expend for such purpose "not to exceed two thousand dollars per annum for each such pupil". While its interpretation of Section 4407 is highly doubtful, as hereafter shown, the department has treated that section as permitting funds to be made available up to the maximum sum specified even though the cost of instruction exceeded that sum; in such cases, the parents paid the excess or obtained the excess sum from other sources. For example, if the cost of instruction at a private school were $2500, the department under Section 4407 would pay $1900 (the maximum fixed by the department's own regulations), and the parents would make up the $600 difference.

The complaint contained four claims; there were averments that it was a class action (Fed.R.Civ.P. 23)

    (a) for all persons aggrieved by failure to provide adequate special classes for brain injured children, and

    (b) for all poor persons aggrieved by the $2000 limit in Section 4407.

The first three claims appear to have been directed against the City defendants for failure to provide adequate special classes for brain injured children, said to be a denial of the equal protection of the laws and a deprivation of due process.

The fourth claim appears to have been directed against the State defendants, specifically against the $2000 limit in Section 4407. It is said that this denies to the poor the equal protection of the laws in that they cannot find a private school at a cost within the $2000 limit (or lower maximum fixed by the department) and are financially unable to pay the excess, whereas financially able parents can receive the benefits of Section 4407 because they can pay the excess required to meet the cost of instruction. Plaintiffs aver that they are not financially able to pay the excess required.

The relief sought in the complaint was:

    (1) preliminary and permanent injunctions "enjoining" the City defendants "to provide free public education for infant plaintiffs * * * during the school year 1969–1970, including the provision of an adequate number of special classes and adequate staff and resources to properly screen and group with reasonable speed infant plaintiffs * * * in appropriate classes";

    (2) a declaratory judgment that failure of "defendants" to provide classes for plaintiffs is a violation of their constitutional rights;

    (3) the convening of a three-judge court to enter preliminary and permanent injunctions "enjoining" the State defendants "from enforcing Section 4407 of the New York Education Law insofar as it limits payments to $2000 per child per year and ordering such defendants to provide, upon request, for infant plaintiffs * * * all funds necessary to obtain an appropriate education in an approved private school during the school year 1969–1970"; and

    (4) a declaratory judgment that failure of the State defendants to provide funds under Section 4407 adequate to enable plaintiffs to attend private

schools denies them the equal protection of the laws.

The action was averred to be brought under 42 U.S.C. § 1983; jurisdiction was based on 28 U.S.C. § 1343(3) and (4).

Plaintiffs then moved the Court (a) for a preliminary injunction "enjoining" the City defendants "from failing to provide named infant plaintiffs * * * with a free public education in appropriate special classes for brain-injured children" and (b) for an order convening a three-judge court to consider preliminary and permanent injunctions "enjoining" the State defendants "from enforcing Section 4407 * * * in so far as it limits tuition payments for brain-injured children to $2000 * * *".

The State defendants moved "pursuant to rule 12(b) of the Federal Rules of Civil Procedure"·to dismiss the complaint for failure to state a claim and for lack of jurisdiction "over the defendants Department of Education and Nyquist".

The two motions were heard by a single judge on August 19, 1969.

While the two motions were under advisement, a motion was made by Mitchell Garlick and Ramon Rodriguez for leave to intervene; they also moved to convene a three-judge court. These movants, Mitchell and Ramon, are children. Mitchell is not "brain injured" but is a "handicapped child" within the definition in Section 4401(1) of the Education Law; he is classified by the City Board as a "mentally retarded and severely emotionally disturbed" child. Ramon is "brain injured".

The complaint of the proposed intervenors set forth two claims. The first claim by Mitchell and Ramon was against the State defendants only and attacked Section 4407 for the same reasons as had the plaintiffs. The second claim was by Ramon alone and while on its face was directed against all defendants, it appeared to involve primarily (if not solely) the City defendants.

The reason the motion to intervene was made, as recited in the moving papers, was that the original plaintiffs were "unable to represent adequately" the claims of the movants. This was because the City defendants were "apparently * * * agreeable to placing plaintiffs in special classes".

The motion to intervene was heard by the single judge on October 15, 1969. Defendants opposed. Decision was reserved.

While the three motions were still under advisement, counsel for the City defendants advised the Court of helpful efforts being made with respect to the three original plaintiffs. Under date of October 28, 1969, counsel advised by letter that Steven had been admitted to a special class; that it had been decided to be better for Teddy to remain in a normal class and that he was attending such a class; and that Larry had been found ineligible for a special class. With respect to Larry, the letter quoted a panel report on him as follows:

> "The review of the classroom screening reports coupled with the review of the antecedent, anecdotal history indicates that this child cannot be safety managed in an HC30 series class [brain-injured]. His impulse control is too poor to permit this with any degree of safety furthermore, child will disrupt children in the class. He is therefore, considered ineligible for this program."

A copy of this letter was sent to counsel for plaintiffs and no exception was taken by counsel for plaintiffs to its factual statements. These were therefore assumed to be correct. [The letter was physically placed in the Clerk's file but was not entered in the docket; hence the letter was not part of the record on appeal later sent to the Court of Appeals.]

By order filed November 24, 1969, made on stipulation, the original plaintiffs and proposed intervenors were allowed to withdraw their motions for a preliminary injunction against the City

defendants. Doubtless this was because of the arrangements being made by the City defendants to help the children involved.

The three motions were decided by me, as the single judge, by orders, with opinions, filed January 20, 1970.

The motion of the State defendants to dismiss the action as to the original plaintiffs for failure of the complaint to state a claim upon which relief can be granted was granted. This was on the ground that Section 4407 treats all children exactly alike and that failure to recognize the differences in financial ability between beneficiaries did not violate any constitutional rights of plaintiffs. Reference was made to the public school system in which rich, poor and in-between may attend the same schools on the same basis. Citation was made also to Carmichael v. Southern Coal Co., 301 U.S. 495, 57 S.Ct. 868, 81 L.Ed. 1245 (1937). It was also said that under Monroe v. Pape, 365 U.S. 167, 187–192, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), there was no jurisdiction "personally" over the state department of education because the department was not a "person" within the meaning of 42 U.S.C. § 1983. [The use of the word "personally" was probably a mistake; it would seem that as to the department subject matter jurisdiction was lacking.] It was said that under Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), there was jurisdiction as to Nyquist.

The motion for convening a three-judge court as to the State defendants was denied as moot as to Steven and Teddy because they were by that time being given a free public education, Steven in a special class and Teddy in a regular class. The motion for convening a three-judge court as to the State defendants was denied as to Larry because his action against the State defendants was being dismissed on the merits.

The motion of Ramon for leave to intervene was denied because by that time he had been placed in a special class for brain injured children and thus was not a member of the class for which the action was brought. The motion of Mitchell for leave to intervene was granted because, while he was not brain injured, he was for other reasons a "handicapped child", was not eligible for any special classes offered by the City defendants, and might be able to attack Section 4407. The motion of Mitchell to convene a three-judge court was denied because the constitutional claim was without merit.

At this point the action of the three original plaintiffs was technically still pending against the City defendants but without any chance of success as to them because as to Steven and Teddy they were being given a free public education and Larry was ineligible to attend any of the special classes offered by the City defendants. The action of intervenor Mitchell was technically still pending against the State defendants because they had not made a motion to dismiss as to him.

Larry and Mitchell then appealed.

The decision of the Court of Appeals was filed on August 3, 1970 with an opinion by Judge Friendly (430 F.2d 1145). That Court agreed that there was jurisdiction as to the Commissioner but none as to the department. The Court of Appeals then found that the equal protection claims of Larry and Mitchell as to Section 4407 "were sufficiently substantial to deserve exploration, possibly after the taking of evidence, before a court of three judges". The action was remanded with instructions to vacate the judgment dismissing the complaint of Larry and Mitchell against the Commissioner and to request that a three-judge court be convened to consider their claims against him.

Thereafter this district court of three judges was properly constituted. 28 U.S.C. § 2284.

By order filed October 7, 1970, a hearing was directed to be held on November 5, 1970 and a briefing schedule was es-

tablished. The order contained the following provision:

"It is assumed that the parties do not wish to offer evidence and that should evidence be offered it will be by stipulation of the parties. If any party wishes to offer evidence on any disputed issue of fact, such party shall serve and file notice of any such disputed issue of fact no later than October 30, 1970."

Thereafter, on October 30, 1970, "plaintiffs" (actually Larry and Mitchell only) gave notice that they would present evidence on the following issues:

"1. The adequacy of the number of special classes for educable brain injured children in the City of New York,

2. The availability of education in private schools with a tuition under $2000 for educable handicapped children unable to obtain a public education;

3. The cost per student in public schools of an equivalent education."

Thereafter plaintiffs gave notice that, for reasons stated, they would ask for an adjournment of the hearing.

The Court met on November 5, 1970. The application of plaintiffs for an adjournment was granted and January 21, 1971 was fixed as the adjourned date for the hearing. The Court supplied counsel with a memorandum of certain factual issues which counsel were expected to attempt to resolve by stipulation or by concession.

By the time of the meeting on November 5, 1970, it had become clear that no plaintiff had any claim against the City defendants because all three at that time were being given free public education in City schools, Larry and Teddy in regular classes and Steven in a special class. As already noted, Mitchell (the only intervenor-plaintiff) made no claim against the City defendants.

By order to show cause returnable on January 21, 1971, Riley Reid, an infant suing by his mother, moved for leave to intervene as a plaintiff (Fed.R.Civ.P. 24) and for further relief. The complaint of this proposed intervenor asserted a claim against the City defendants only. The claim was solely that Riley was "minimally brain injured", that he had applied for acceptance in one of the special classes of the City for the brain injured, but that no action had been taken on his application, and that no action would be taken "for up to one year". It appeared that Riley was attending regular classes in a City school.

By notice of motion returnable January 21, 1971, "plaintiffs" moved for an order determining that this action may be maintained as a class action (Fed.R. Civ.P. 23(c) (1)). The accompanying memorandum of law showed that the motion was made for intervenor-plaintiff Mitchell.

The Court had a hearing on January 21, 1971. Before the Court at that time were the following motions:

(1) motion by plaintiff Larry for a preliminary injunction against the Commissioner (no new motion papers were served; the motion papers had been served in July, 1969);

(2) motion by intervenor-plaintiff Mitchell for a preliminary injunction against the Commissioner (no new motion papers were served; an order to show cause had been obtained in October, 1969);

(3) motion of the Commissioner to dismiss the action as to him for failure to state a claim upon which relief can be granted (this motion had been granted by the single judge but the Court of Appeals had determined that this could be properly considered only by a three-judge court);

(4) motion by Riley Reid for leave to intervene, etc.; and

(5) motion by intervenor-plaintiff Mitchell to maintain the action as a class action.

At the hearing on January 21, 1971, there was oral argument. A stipulation of facts was presented and accepted.

With the consent of the parties, information had been secured by me, principally as to tuition cost, by means of a questionnaire sent to each school on the Commissioner's list of schools eligible under Section 4407. This information was made a matter of record.

The Court denied from the Bench the motion of Riley Reid for leave to intervene ((4) above). The reason given was that intervention was sought solely to assert a claim against the City defendants, that denial of intervention could not prejudice Riley because his claim could be asserted in an action before a single judge, that the three-judge court had before it claims against the Commissioner only, and that the intervention sought would delay disposition of those claims.

Decision was reserved on the other motions.

## II

Section 4407, as has already been seen, authorizes the state department of education "to contract with" a private school "for instruction" of a "handicapped child" who "is not receiving such instruction because there are no adequate public facilities for instruction of such a child within this state". The obvious purpose is to permit the state to contract with a private school when there are no adequate "public" facilities.

The section was enacted, effective April 11, 1957 (Laws 1957, chapter 363).

The section was enacted on the recommendation of the department, which submitted the following memorandum in that connection (McKinney's 1957 Session Laws, page 2079):

"This bill adds a new section to the Education Law to make it possible for the state to assist in providing instruction for certain physically handicapped children who are capable of benefiting from instruction, but for whom because of the nature of the handicap or combination of handicaps, there are no facilities providing suitable service in this state.

"The Bureau of Handicapped Children indicates that the number of cases would be very small indeed and that it expects only a handful of cases each year who would qualify for such service. There would be included among these a very small number of brain injured children although most children with some degree of brain injury would be able to benefit from existing facilities in the state and, therefore, would come within the terms of this bill. The Bureau estimates that there are approximately five children known to them who might qualify for instruction under this provision. The expenditure on behalf of each such child is limited to $2000.00 per year.

"It is recommended that this bill receive executive approval."

It appears without dispute that the words "contract * * * for instruction" have always to the department meant tuition only, that is, the cost of teaching—as opposed to costs for board, room, transportation, and the like. The word "instruction" on its face seems to have exactly this meaning and, if interpretation be involved, that of the department in this respect seems required.

After 1957, as the value of the dollar declined, some of the private schools began to charge more than $2000 for tuition. If classes were full at schools charging less than that amount, some handicapped children had to go to a school charging more than $2000 or not go to any school. The department then adopted an interpretation of Section 4407 for situations in which a handicapped child required instruction at a private school charginging more than $2000 for tuition. The interpretation of the department was and is that, in such situations, it may, under Section 4407, pay $2000 toward the cost of tuition, leaving the excess to be found elsewhere by the parents. Whether the state pays the sum directly to the school or reimburses the parent does not appear.

The interpretation of Section 4407 by the department seems mistaken, or at least highly doubtful. The history and wording of Section 4407 would indicate that it authorizes the department "to contract * * * for instruction" provided the contract does not require an expenditure of more than $2000 per year per pupil.

On its face, Section 4407 seems to mean that the department is authorized to contract for the *full* cost of instruction or not at all. The department is authorized "to contract with an educational facilitity * * * for instruction of such child in such educational facility" and to expend up to $2000 "for such purpose" and the "purpose" is "instruction", not partial instruction. This also seems to be shown by the department's memorandum, quoted above, when the section was first enacted.

The legislature must have felt that the $2000 maximum would cover full tuition for any handicapped child. Even fourteen years later—after the substantial decline in the purchasing price of the dollar, of which we may take judicial notice—most of the schools on the approved list of the department charge less than $2000 for tuition. Replies on file from 94 schools supplying responsive information show that 63 of the schools still charge less than $2000 for tuition; that 6 charge $2500 or less; that 6 charge $3000 or less; that 8 charge $3500 or less; and that 11 charge more than $3500. It may be supposed, however, that above $3000, the replying schools have included charges beyond tuition (such as room and board).

There are no New York decisions interpreting Section 4407. If, as seems not unlikely, the state courts were to restrict Section 4407 to contracts for full tuition for $2000 or less, the present equal protection claims would disappear. This is a situation to which the doctrine of abstention should be applied. Railroad Commission v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941); Harrison v. NAACP, 360 U.S. 167, 79 S.Ct. 1025, 3 L.Ed.2d 1152 (1959); see also Zwickler v. Koota, 389 U.S. 241, 248–252, 88 S.Ct. 391, 19 L. Ed.2d 444 (1967); Wright, Federal Courts (2d ed.) 196–208.

If we were to decide the interpretation of Section 4407, our answer could only be "tentative" and subject to being "displaced tomorrow by a state adjudication". We are instructed under these conditions to "avoid the waste of a tentative decision as well as the friction of a premature constitutional adjudication". Railroad Commission v. Pullman Co., above, 312 U.S. at 500, 61 S.Ct. at 645.

It has also been said that the court may "decline to give relief if there are special circumstances which make it desirable for the court to stay its hand or decline to interfere" and that the court "should avoid decision of a constitutional question when construction of a State statute in the state courts may make such a decision unnecessary". Alabama Public Service Commission v. Southern Ry. Co., 341 U.S. 341, 360, 71 S.Ct. 762, 95 L.Ed. 1002 (Frankfurter, J., concurring). Such "special circumstances" have been found "in cases involving possible disruption of complex state administrative processes". Zwickler v. Koota, above cited, 389 U.S. at 249 fn. 11, 88 S.Ct. at 396. Section 4407 is a part of Article 89 of the Education Law of New York, Article 89, itself only part of the Education Law of New York, establishes a broad program under the department's supervision for relief, care, cure and education of handicapped children. Section 4407 is but one of several provisions in this program. For example, the department has the duty to provide for handicapped children from the funds of the department, without any maximum limit, "home-teaching, transportation, scholarships in non-residence schools, tuition or maintenance and tuition in * * * schools * * * *when not otherwise provided by parents, guardians, local authorities or by other sources, public or*

*private*" (Education Law § 4403(1); emphasis supplied). We need not further analyze the program. It sufficiently appears that it is one of the "complex state administrative processes", that the state is thereby attempting to help handicapped children, and that the injunction here sought would or might disrupt the program.

The Court was given a copy of a complaint in an action (Feldman) in the Supreme Court for Kings County against both City and State defendants which seems to raise the same issue as in the case at bar. It is understood that this (Feldman) action has been stayed pending decision in the case at bar.

The claims made in this action should, for the reasons indicated, be presented in the first instance to the courts of New York. Plaintiffs and the intervenor-plaintiff appear to accept the interpretation of Section 4407 made by the department. They ask for a direction that the $2000 limit be disregarded and that the department supply them with whatever amounts above $2000 may be required for their tuition. Whether this type of remedy would in any event be appropriate need not now be decided. The claims can be presented to the State courts which will necessarily by required to determine the meaning in this respect of Section 4407.

Where the abstention doctrine is applied, it is said to be "better practice * * * to retain jurisdiction, rather than to dismiss". Zwickler v. Koota, above, at 244 fn. 4, 88 S.Ct. at 393; see Wright, above, at 198.

### III

As already noted, the action is technically still pending against the City defendants on the complaint of the three original plaintiffs. It has been shown, however, that as to them the action is moot and on this ground should be dismissed.

The foregoing contains the findings of fact and conclusions of law required by Fed.R.Civ.P. 52(a).

The motions by plaintiff Larry Mc-Millan and intervenor-plaintiff Mitchell Garlick for a preliminary injunction against the Commissioner are each denied, without prejudice to their renewal after a final determination in the State courts of the meaning of Section 4407.

The motion of intervenor-plaintiff Mitchell Garlick for a determination that this action may be maintained as a class action is reserved for consideration in the event that this action subsequently goes forward.

The motion of defendant Nyquist to dismiss the action is denied, without prejudice to its renewal after a final determination in the State courts of the meaning of Section 4407.

There is an express determination that there is no just reason for delay (Fed.R.Civ.P. 54(b)) and the Clerk is expressly directed to enter judgment in favor of the defendants The Board of Education of the City of New York, Donovan, and Arnold dismissing the action as against them because as to them it is moot.

Jurisdiction of the action as against defendant Nyquist is retained but all proceedings herein are stayed until the further order of this Court.

So ordered.