Benjamin **HARRISON**, by his parents Mr. and Mrs. Kenneth Harrison, et al.

v.

**STATE OF MICHIGAN** et al.

**Civ. A. No. 38357.**

United States District Court,
E. D. Michigan, S. D.

Oct. 30, 1972.

George Newman and Alan Houseman, Michigan Legal Services, Detroit, Mich., Paul R. Dimond, Harvard University, Cambridge, Mass., of counsel, for plaintiffs.

George McCargar, Jr., Lansing, Mich., George T. Roumell, Jr., Detroit, Mich., for defendants.

## MEMORANDUM OPINION AND ORDER

JOINER, District Judge.

This action is brought by eleven (11) children and one (1) adult, and by their parents, who allege they have been denied access to the public schools of Michigan because of alleged mental, behavioral, physical, or emotional handicaps. The plaintiffs further assert that the denial of access to public education is a denial of equal protection under the United States Constitution, and that procedures used to classify, suspend, expel and deny education are arbitrary and a denial of due process of law under the United States Constitution. Plaintiffs assert a cause of action on behalf of all others similarly situated.

Plaintiffs have been met with a barrage of motions to dismiss based on F.R.Civ.P. 12(b), failure to state a claim upon which relief can be granted. This court, in deciding whether to grant any of the motions to dismiss, has looked upon plaintiffs' allegations as if admitted. The court has given plaintiffs' pleadings, brief and arguments the widest and most liberal construction possible.

Until very recently the State of Michigan was making little effort to educate children who are suffering from a variety of mental, behavioral, physical and emotional handicaps. Many children were denied education. The efforts made until the adoption of Public Act 198 in 1971 raise serious questions as to whether such persons were denied equal protection of the law. If that condition still existed this court would have no difficulty, or exercise the slightest hesitation, relying on Pennsylvania Association for Retarded Children v. Commonwealth of Pennsylvania, 334 F.Supp. 1257 (E.D.Pa.1971), in denying the motions to dismiss. However conditions have changed. Michigan Public Act No. 198 of the 1971 Session renders plaintiffs' complaint moot. This law is a whole new attack on the problem of special education. For the first time the legislature has directed in unequivocal terms the state and other educational districts to face up to the problem of providing "educational programs and services designed to develop the maximum potential of every handicapped person." Beginning with the school year 1973–74 no longer will education for the classes of persons of which the plaintiffs are members be optional. Public Act 198 requires that there be programs for such persons. The whole power of the state is by this act put behind an effort to provide an education for the handicapped.

The act is operative now. Already preliminary state plans for the operation of this comprehensive program have been published. Every indicator points to full compliance with the legislative man-

date by the beginning of the school year 1973–74.

The problem presented to the court by this case is compelling. A very significant number of persons are born, are raised, and spend their whole life in the shadow world of mental retardation, physical disability and emotional disorientation. Had the legislature not acted, this court would not have hesitated to step in to consider the problems of these and other plaintiffs. The legislature has, however, acted and there is no reason to think that any further directive by this court could speed the process or provide a more comprehensive approach to the problem. In the instance where a program was developed pursuant to court direction the time schedule for implementation was eleven (11) months. Pennsylvania Association for Retarded Children v. Commonwealth of Pennsylvania, 334 F.Supp. 1257 (E.D. Pa.1971). The planning for the implementation of Public Act 198 from now until the beginning of the school year is a shorter period than that.

■ The plaintiffs accurately contend that providing education for some children, while not providing education for others (in this instance, handicapped children) is a denial of equal protection. Public Act 198 is a comprehensive statute which attacks this particular constitutional problem. Beginning in September, 1973 (or the 1973–74 school year), a special education plan must be implemented which will provide for the delivery of special education programs and services, designed to develop the maximum potential of every handicapped person. Creating a plan of this calibre, and overseeing the implementation of it, is more of a legislative function than a judicial function. The pursuasive element here is not whether the court could draft or create a better plan, but rather whether it could insure its implementation at an earlier date. In no way could this be done. Designing a comprehensive program to provide education for persons as diverse as the handicapped in

this action is perhaps the most difficult educational problem facing society today. It simply is not the sort of problem which can be resolved by the issuance, no matter how well intended, of a judicial order. Any judicial order would necessarily have to incorporate many of the implementation steps in Public Act 198. The state is already taking these steps. This court could do no more than act as a cheering section. This is not the function of the judicial process.

A denial of equal protection is a very serious problem, but in some instances remedying the problem, or doing away with the problems may require " . . . deliberate speed . . ." Brown et al. v. Board of Education of Topeka et al., 349 U.S. 294, 301, 75 S.Ct. 753, 99 L.Ed. 1083 (1955). The actual issue in this case is whether a judicial remedy can eliminate the problem at an earlier date than the comprehensive program already adopted by the Michigan legislature.

The lawsuit must be dismissed as to plaintiffs' denial of equal protection claim because the court finds that it could not possibly, no matter how much it might like to, do anything more to solve the equal protection problem before the proposals already being implemented under the leadership of the Michigan legislature, Michigan Public Act 198, 1971. This being true it can only be concluded that Public Act 198 and the action taken to implement it requires dismissal of any lawsuit regarding denial of equal protection.

■ The plaintiffs have complained that the statute (Public Act 198) does not require a hearing before a child is transferred from a regular or special education program to a different special education program. Even if such a hearing is required by the Constitution, a matter which is not passed on at this time, it would be premature to hold that the statute will be applied in an unconstitutional fashion. Local No. 8–6, Oil, Chemical and Atomic Workers International Union v. Missouri, 361 U.S. 363, 80 S.Ct. 391, 4 L.Ed.2d 373 (1959).

Section 252(b) of Public Act 198 requires a state plan for the education of the handicapped to be finalized by March 1, 1973. It may well be that the final plan will (a) mandate a hearing process before persons are determined to be handicapped or are assigned to a particular program, and these assignments, or (b) the plan itself may well contain guidelines flexible enough to require due process in these respects without a specific mandate. The court must assume that the statute will be applied in a constitutional fashion, whether it be in reference to equal protection, or in reference to due process. Local No. 8–6, Oil, Chemical and Atomic Workers International Union v. Missouri, supra.

The most that should be done at this stage is to indicate clearly that, although the matter is at this time premature because the process of implementation is proceeding in good fashion, and because there is no way in which this court could proceed with implementation faster, if it should turn out either that the act is not fully and speedily implemented and funded or that procedures do not comply with due process, judicial remedies would then be available to the injured persons.

The plaintiffs and their counsel are to be commended for energies expended on behalf of a group that ranks among the state's most misfortuned citizens. This court sincerely hopes that the parties can channel their energies towards working with the appropriate state officials in an effort to resolve the problem of full implementation and any due process issues without having to go to the expense and time which must be expended when the judiciary becomes involved. The court takes notice of the fact that all the parties, both plaintiffs and defendants, actually seek the same goal; an adequate and free public education for the children of this state, regardless of handicap.

The parties are encouraged to engage in rational and amicable discourse with the object of arriving at a course of action that will not involve a federal court.

Surely no one would dispute the notion that finding a solution without having to involve the court, regardless of the court's willingness to become involved if necessary, would be the course of action most beneficial to the persons with whom we should be most concerned: the handicapped.

It should be underscored that this court does not feel it can implement a plan to bring education to the handicapped children of the state more quickly than under the plan initiated and approved by the legislature.

But what of the twelve (12) individual plaintiffs? Should not the court retain jurisdiction as to them and determine their eligibility for education? Their case, compelling as it is, is no more compelling than that of the thousands who are to be the beneficiaries of Public Act 198. The state by its action in adopting and implementing Public Act 198 has eliminated the equal protection argument as to the twelve (12), as well as to the entire class of handicapped persons, and the court must assume that the state will act constitutionally, rather than unconstitutionally, in its implementation of procedural rules as to the twelve (12) as well as to the entire class.

If the court were to hold to the contrary, the twelve (12) handicapped plaintiffs would be singled out for individual treatment of their problems, and perhaps not without some justification, for equity aids the vigilant. But whatever facilities could benefit these parties are already being used to their maximum potential. Indeed, plaintiffs themselves note the long waiting lists at these facilities. The handicapped persons already enrolled in these programs have been equally vigilant, and the court will not remove some of their number to make room for the plaintiffs.

The people of the state, including the plaintiffs, are in a more fortunate position in this case than in other cases involving constitutional deprivation of an educational experience. Here the legislature has acted and the Executive De-

partment is implementing that action, all prior to the time that the judicial branch of government was requested to act. The difficulties of producing meaningful results when the legislature and the executive branches drag their feet in response to judicial leadership are demonstrated in the history of school desegregation. Here, with the enactment of Public Act 198, the legislature has faced up to the constitutional problem of equal protection before this cause was brought to the courts. Here the Executive Department can face up to the problems of due process in implementing the act before the act is fully operative. Had the same foresight and leadership on the part of other branches of government been evidenced in the school desegregation problems, it is clear there would have been fewer controversies, less stress and probably quicker and more widespread results.

The plaintiffs have presented no facts which state a valid claim. Public Act 198 eliminates the equal protection argument, and the issue of due process under that statute is prematurely raised. Defendants' motions to dismiss are granted.

So ordered.