LOCAL NO. 8-6, OIL, CHEMICAL AND ATOMIC
WORKERS INTERNATIONAL UNION,
AFL-CIO, ᴇᴛ ᴀʟ. *v.* MISSOURI.

No. 42.   Argued November 19, 1959.—Decided January 25, 1960.

*Mozart G. Ratner* argued the cause for. appellants.
With him on the brief was *Morris J. Levin.*

*Robert R. Welborn,* Assistant Attorney General of Missouri, argued the cause for appellee. With him on the brief was *John M. Dalton,* Attorney General of Missouri.

*I. J. Gromfine, Bernard Cushman, Herman Sternstein* and *Justus R. Moll* filed a brief for the Amalgamated Association of Street, Electric Railway and Motor Coach Employes of America, AFL-CIO, as *amicus curiae,* in support of appellants.

Briefs of *amici curiae* in support of appellee were filed by *Richmond C. Coburn* for the Chamber of Commerce of Metropolitan St. Louis; *Myron K. Ellison* for the Missouri State Chamber of Commerce et al.; *Irvin Fane, Harry L. Browne* and *Howard F. Sachs* for the Kansas City Power & Light Co.; and *James M. Douglas* and *Edmonstone F. Thompson* for the Laclede Gas Co.

MR. JUSTICE STEWART delivered the opinion of the Court.

This is an appeal from a judgment of the Supreme Court of Missouri affirming a decree which enjoined the appellants from continuing a strike against a St. Louis public utility. The judgment upheld the constitutionality of certain provisions of a Missouri law, commonly known as the King-Thompson Act, which authorizes the Governor on behalf of the State to take possession of and operate a public utility affected by a work stoppage when in his opinion "the public interest, health and welfare are jeopardized," and "the exercise of such authority is necessary to insure the operation of such public utility." [1]

---

[1] The King-Thompson Act is Chapter 295 of the Revised Statutes of Missouri, 1949. The section of the statute which authorizes seizure by the Governor on behalf of the State is Mo. Rev. Stat., 1949, § 295.180.

In the state courts and in this Court the appellants have contended that the Missouri law conflicts with federal legislation enacted under the Commerce Clause of the Federal Constitution, and that it violates the Due Process Clause of the Fourteenth Amendment. Because of doubt as to whether the controversy was moot, we postponed further consideration of the question of jurisdiction to the hearing of the case on the merits. 359 U. S. 982.

The appellants are labor unions which represent employees of the Laclede Gas Company, a corporation engaged in the business of selling natural gas in the St. Louis area. In the spring of 1956 the appellants notified Laclede of their desire to negotiate changes in the terms of the collective bargaining agreement which was to expire in that year. Extended negotiations were conducted, but no new agreement was reached, and upon expiration of the existing contract on June 30, 1956, the employees went out on strike.[2]

Five days later the Governor of Missouri issued a proclamation stating that after investigation he believed that the public interest, health, and welfare were in jeopardy, and that seizure under authority of the state law was necessary to insure the company's continued operation. In an executive order issued the same day the Governor took "possession" of Laclede "for the use and operation by the State of Missouri in the public interest." A second executive order provided that all the "rules and regulations . . . governing the internal management and organization of the company, and its duties and responsibilities, shall remain in force and effect throughout the term of operation by the State of Missouri."

---

[2] All employees represented by the appellants, approximately 2,200, participated in the strike; approximately 300 supervisors and others not in the bargaining units represented by the appellants remained at work.

After the seizure the appellants continued the strike in violation of the statute,[3] and the State of Missouri filed suit for an injunction against them in the Circuit Court of St. Louis.[4] At the end of a three-day hearing the trial court entered an order enjoining the appellants from continuing the strike, and in an amendment to the decree declared the entire King-Thompson Act constitutional and valid. On July 14, 1956, the day after the injunction issued, the strike was terminated. On August 10, 1956, the appellants and Laclede signed a new labor agreement, and on October 31, 1956, the Governor ended the seizure.

On appeal the Supreme Court of Missouri, although noting that the injunction had "expired by its own terms," nevertheless proceeded to consider the merits of certain of the appellants' contentions. The court restricted its consideration, however, to those sections of the King-Thompson Act "directly involved"—"Section 295.180, relating to the power of seizure, and subparagraphs (1) and (6) of Section 295.200 RSMo, V.A.M.S., making unlawful a strike or concerted refusal to work after seizure and giving the state courts power to enforce the provisions of the Act by injunction or other means."[5] 317 S. W. 2d, at 316. In upholding the constitutionality of these sections of the Act, the court explicitly declined to pass on other provisions which the appellants sought to attack, stating: "The

---

[3] Missouri Rev. Stat., 1949, § 295.200, par. 1, provides: "It shall be unlawful for any person, employee, or representative as defined in this chapter to call, incite, support or participate in any strike or concerted refusal to work for any utility or for the state after any plant, equipment or facility has been taken over by the state under this chapter, as means of enforcing any demands against the utility or against the state."

[4] Missouri Rev. Stat., 1949, § 295.200, par. 6, provides: "The courts of this state shall have power to enforce by injunction or other legal or equitable remedies any provision of this chapter or any rule or regulation prescribed by the governor hereunder."

[5] See notes 1, 3 and 4, *supra*.

sections which we have considered are severable from and may stand independently of the remainder of the Act. Although the defendants argue strenuously to the contrary, no case is made in this record for determination of the constitutionality of section 295.090, pertaining to a written labor agreement of a minimum duration and section 295.200, subparagraphs 2, 3, 4 and 5, relating to monetary penalties and loss of seniority. We, therefore, refrain from expressing any opinion with reference thereto." 317 S. W. 2d, at 323. Accordingly, the court "limited and modified" the judgment of the trial court so as to remove all possible intimation that any provisions of the Act had been held constitutional, other than those necessarily upheld in sustaining the validity of the injunction.[6]

Because that injunction has long since "expired by its own terms," we cannot escape the conclusion that there remain for this Court no "actual matters in controversy essential to the decision of the particular case before it." *United States* v. *Alaska S. S. Co.,* 253 U. S. 113, 116. Whatever the practice in the courts of Missouri, the duty of this Court "is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." *Mills* v. *Green,* 159 U. S. 651, 653. See *Bus Employees* v. *Wisconsin Board,* 340 U. S. 416. To express an opinion upon the merits of the appellants' contentions would be to

---

[6] The court did reaffirm an earlier decision (*State ex rel. State Board of Mediation* v. *Pigg,* 362 Mo. 798, 244 S. W. 2d 75) upholding the constitutionality of provisions of the King-Thompson Act relating to the State Board of Mediation and public hearing panels, "[t]o the extent that those sections are a necessary predicate for the additional sections . . . with which we are now concerned . . . ." 317 S. W. 2d, at 315.

ignore this basic limitation upon the duty and function of the Court, and to disregard principles of judicial administration long established and repeatedly followed.[7]

In *Harris* v. *Battle,* 348 U. S. 803, these principles were given concrete application in a context so parallel as explicitly to control disposition of the primary issue here. That case originated as an action to enjoin the enforcement of a Virginia statute, markedly similar to the King-Thompson Act, under which the Governor had ordered that "possession" be taken of a transit company whose employees were on strike. Although the labor dispute was subsequently settled and the seizure terminated, the trial court nevertheless proceeded to decide the merits of the case, holding that the seizure was constitutional. *Harris* v. *Battle,* 32 L. R. R. M. 83. The Virginia Supreme Court refused an appeal. *Harris* v. *Battle,* 195 Va. lxxxviii. In this Court it was urged that the controversy was not moot because of the continuing threat of state seizure in future labor disputes.[8] It was argued that the State's abandonment of alleged unconstitutional activity after its objective had been accomplished should not be permitted to forestall decision as to the validity of the statute under which the State had purported to act.[9] It was contended that the situation was akin to cases like *Southern Pac. Terminal Co.* v. *Interstate Commerce Comm'n,* 219 U. S. 498, 514–516.[10]

[7] See, *e. g., Singer Mfg. Co.* v. *Wright,* 141 U. S. 696; *California* v. *San Pablo & Tulare R. Co.,* 149 U. S. 308; *Mills* v. *Green,* 159 U. S. 651; *American Book Co.* v. *Kansas,* 193 U. S. 49; *United States* v. *Hamburg-American Co.,* 239 U. S. 466; *Commercial Cable Co.* v. *Burleson,* 250 U. S. 360; *United States* v. *Alaska S. S. Co.,* 253 U. S. 113; *Brownlow* v. *Schwartz,* 261 U. S. 216; *Alejandrino* v. *Quezon,* 271 U. S. 528; *Barker Co.* v. *Painters Union,* 281 U. S. 462.

[8] See jurisdictional statement in *Harris* v. *Battle,* No. 111, O. T. 1954, pp. 12–13.

[9] *Ibid.*

[10] *Ibid.*

In finding that the controversy was moot, the Court necessarily rejected all these contentions. 348 U. S. 803. Upon the authority of that decision the same contentions must be rejected in the present case. See also *Barker Co.* v. *Painters Union,* 281 U. S. 462; *Commercial Cable Co.* v. *Burleson,* 250 U. S. 360.

However, as the appellants point out, the decision in *Harris* v. *Battle* is not completely dispositive here because, unlike the Virginia statute, the King-Thompson Act contains provisions which impose: (1) monetary penalties upon labor unions which continue a strike after seizure; [11] and (2) loss of seniority for employees participating in such a strike.[12] The Missouri court found that these separable provisions of the Act were not involved in the present case, and it carefully refrained from passing on their validity.[13] The court noted that liability for monetary penalties had been asserted in a separate lawsuit, 317 S. W. 2d, at 314, and the parties have informed us that the action is still pending in the state courts.

---

[11] Missouri Rev. Stat., 1949, § 295.200, par. 3, provides: "Any labor organization or labor union which violates paragraph 1 of this section shall forfeit and pay to the state of Missouri for the use of the public school fund of the state, the sum of ten thousand dollars for each day any work stoppage resulting from any strike which it has called, incited, or supported, continues, to be recovered by civil action in the name of the state and against the labor organization or labor union in its commonly used name."

[12] Missouri Rev. Stat., 1949, § 295.200, par. 2, provides: "It shall be unlawful for any public utility to employ any person or employee who has violated paragraph 1 of this section except that such person or employee may be employed only as a new employee."

[13] See pp. 366–367, *supra.* Since neither the statutory penalties nor possible loss of seniority turns on the validity of the injunction, this case is quite unlike *Bus Employees* v. *Wisconsin Board,* 340 U. S. 383, where the very judgment in controversy imposed financial liability. Nor did this case involve a "perpetual" injunction. See *Bus Employees* v. *Wisconsin Board,* 340 U. S. 416, n., at 417–418.

We cannot agree that the pendency of that litigation gives life to the present appeal. When that claim is litigated it will be subject to review, but it is not for us now to anticipate its outcome. " 'Constitutional questions are not to be dealt with abstractly'. : . . They will not be anticipated but will be dealt with only as they are appropriately raised upon a record before us. . . . Nor will we assume in advance that a State will so construe its law as to bring it into conflict with the federal Constitution or an act of Congress." *Allen-Bradley Local* v. *Wisconsin Board,* 315 U. S. 740, at 746.

· The guiding principle is well illustrated in *American Book Co.* v. *Kansas,* 193 U. S. 49. There the Kansas Supreme Court had ousted the appellant from doing business in the State until it complied with provisions of the local law governing foreign corporations. Pending appeal the appellant satisfied the judgment by complying with the requirements of the statute. But meanwhile the State had brought another action against the appellant to void contracts it had made prior to the date of its compliance. Because of this pending litigation the appellant argued that " 'there still exists a controversy, undetermined and unsettled,' involving the right of the State to enforce the statute against a corporation engaged in interstate commerce." 193 U. S., at 51. What the Court said in rejecting that argument and dismissing the appeal as moot is entirely relevant here. "[T]hat suit is not before us. We have not now jurisdiction of it or its issues. Our power only extends over and is limited by the conditions of the case now before us." 193 U. S., at 52. See *Alejandrino* v. *Quezon,* 271 U. S. 528;

The asserted threat to the seniority rights of Laclede employees is even more speculative. Almost four years have passed since the strike, and the appellants concede that no action has been taken to deprive any employees of their seniority. Moreover, the section of the Act which

relates to seniority rights imposes no legal sanctions on the employees or their unions, but makes unlawful only the action of the utility company which rehires the employees without loss of seniority.[14] In the unlikely event that a legal proceeding should now be brought against Laclede for having done so, there is no way to know what the outcome of such a proceeding in the Missouri courts might be.[15]

The decision we are asked to review upheld only the validity of an injunction, an injunction that expired by its own terms more than three years ago. Any judgment of ours at this late date "would be wholly ineffectual for want of a subject matter on which it could operate. An affirmance would ostensibly require something to be done which had already taken place. A reversal would ostensibly avoid an event which had already passed beyond recall. One would be as vain as the other. To adjudicate a cause which no longer exists is a proceeding which this Court uniformly has declined to entertain." *Brownlow* v. *Schwartz,* 261 U. S. 216, 217–218.

The judgment of the Supreme Court of Missouri is vacated, and the cause is remanded for such proceedings as by that court may be deemed appropriate.

*Vacated and remanded.*

MR. JUSTICE BLACK, whom THE CHIEF JUSTICE and MR. JUSTICE BRENNAN join, dissenting.

We think this controversy is not moot. As the Court's opinion points out, the appellant unions may still be held liable for monetary penalties and their members may lose seniority because of the strike the Missouri Supreme Court held illegal under state law. Its holding was made long

---

[14] See note 12, *supra.*

[15] The appellee asserts and the appellants do not deny that the statute imposes no penalty for violation of the seniority provisions.

after the strike had ended. It was moot then if it is moot now. But the state court treated it as a live controversy, and so should we. Otherwise, the appellant unions and their members stand constantly under threats of penalties and continuing injunctions under the state statute the Missouri Supreme Court held validly applied in this case.

The wrongfulness in holding the case moot is emphasized by our belief that the state court was plainly without any jurisdiction over this controversy unless the Court wants to overrule *Bus Employees* v. *Wisconsin Board*, 340 U. S. 383, and adopt the views of the three dissenters in that case. We would follow that holding and reverse this case on the merits.