DIVISION 1287, AMALGAMATED AS-SOCIATION OF STREET, ELECTRIC RAILWAY AND MOTOR COACH EM-PLOYEES OF AMERICA, AFL–CIO, Plaintiff,

v.

John M. DALTON, Governor of the State of Missouri, State of Missouri Board of Mediation, Daniel C. Rogers, Individually and as Chairman of the State of Missouri Board of Mediation, Charles Bibbs, Individually and as Member of the State of Missouri Board of Mediation, Albert Fults, Individually and as Member of the State of Missouri Board of Mediation, J. Raymond Lambright, Individually and as Member of the State of Missouri Board of Mediation, and Truman Henry, Individually and as Member of the State of Missouri Board of Mediation, Defendants.

Civ. A. No. 784.

United States District Court
W. D. Missouri,
Central Division.
Nov. 16, 1961.

John J. Manning and Robert S. Fousek, Kansas City, Mo., Bernard Cushman and Bernard Dunau, Washington, D. C., for plaintiff.

Thomas F. Eagleton, Atty Gen., by J. Gordon Siddens, Asst. Atty. Gen., Jefferson City, Mo., for defendants.

BECKER, District Judge.

This is a suit filed by a mass transit workers' union for a declaratory judgment and for an injunction to enjoin the Governor of Missouri and other State officers (constituting the State Board of Mediation) from taking possession of and operating the Kansas City Transit, Inc., under the Missouri Public Utility Seizure and Anti-Strike Law, known as the King-Thompson Act. RSMo (1959), § 295.010 et seq., V.A.M.S. This Act authorizes the State of Missouri to take possession of and operate a public utility, whose effective operation is threatened by a strike, work stoppage or lockout, which in the opinion of the Governor threatens the public interest, health and welfare. It also declares that the acts of employees of a public utility in striking, or in participating in a concerted refusal to work, are unlawful, and punishable by fine against labor organizations and officers. Similar provisions make a lockout by the utility management unlawful. State courts are authorized to enforce the seizure and no-strike provisions of the law by injunction and other equitable remedies.

The complaint alleges that the Act is invalid for several reasons, including claims of violation of specific provisions of the Constitution of the United States.

Proceeding under the Act, the defendants have taken possession of, and are operating in the name of the State, a transit company which is a public utility serving the Kansas City metropolitan area through motor bus operations in the States of Missouri and Kansas.

Three days ago, on November 13, 1961, the union members voted to strike because of failure of the utility to meet its contract demands after expiration of the last contract. A strike thereupon took place. Before midnight the same day, the Governor of Missouri authorized the seizure of the plants, equipment and facilities of the transit company located in Missouri for use and operation by the State under the King-Thompson Act. Yesterday, the Circuit Court of Jackson County, in a suit filed by the State of Missouri, issued a temporary restraining order against the plaintiff union, forbidding continuance of the strike. That suit in the State court was filed subsequently to this suit. The time of filing and of issuance of the restraining order is not critical in determining the rights of the parties to this suit.

In authorizing the seizure and operation of the utility, the Governor of Missouri issued a proclamation, as authorized by State law, stating that the public interest, health and welfare are jeopardized as a result of the threatened interruption of the operation of the public utility, and that exercise of the powers of seizure and operation is necessary to insure the operation of the utility in Missouri.

As a result of the issuance of the restraining order by the State court, the employees of the transit company have returned to work on the recommendation of the officers and attorneys of the plaintiff union.

Now the union, as plaintiff in this suit, requests this Court to issue forthwith a temporary order restraining the Governor and the other defendants from acting under the King-Thompson Act, and to convene a Three-Judge Court to hear and determine this controversy. These requests will be passed on separately.

## APPLICATION FOR RESTRAINING ORDER

The provisions of the King-Thompson Act have been in effect since 1947, a period of fourteen years. The validity of the seizure and operating provisions, and of the auxiliary provisions forbidding strikes and work stoppages, has been challenged without success in the Missouri Supreme Court in the case of State of Missouri v. Local No. 8–6, Oil, Chemical and Atomic Workers International Union, 317 S.W.2d 309, en banc. The judgment of the Supreme Court of Missouri in that case, finding the King-Thompson Act to be valid and constitutional, was appealed to the Supreme

Court of the United States, which refused to pass upon the validity of the provisions of the Act involved on the ground that the controversy was moot. Local No. 8-6, Oil, Chemical and Atomic Workers International Union v. State of Missouri, 361 U.S. 363, 80 S.Ct. 391, 4 L.Ed.2d 373.

Since 1951, when the Supreme Court of the United States held a Wisconsin Public Utility Anti-Strike Law invalid, there have been serious doubts concerning the validity of Missouri's King-Thompson Act. In the meantime, the State of Missouri has continued to enforce the provisions of the King-Thompson Act, and the validity of the Act has been affirmed by the State Court of last resort, as mentioned previously.

At this time no one who is advised can honestly say that the questions of validity of the Act and of propriety of its application in this case are reasonably free of doubt. The Supreme Court of the United States held the Wisconsin Act invalid by a divided court, in a six to three opinion. There are substantial differences between the Wisconsin Act and the Missouri Act which the State claims, with the approval of the Supreme Court of Missouri, render the opinion in the Wisconsin case inapplicable to the Missouri Act. There have been many changes in the personnel of the Supreme Court of the United States since the rendition of the opinion involving the Wisconsin Act in 1951. Responsible and informed lawyers differ concerning the validity of the Missouri Act. Under these circumstances, the ultimate judgment of the Supreme Court of the United States on the validity of the Missouri Act cannot be predicted with any reasonable certainty.

On the other hand, the Supreme Court of Missouri has made it clear, in a unanimous opinion, that the seizure, operation and no-strike provisions of the Missouri Act are regarded as valid when properly applied to utilities located in Missouri. The attitude of the State courts toward this law is now reasonably free of doubt as a result, when so applied.

■■ There are several well settled rules which govern the issuance of a temporary restraining order in a case of this character. First, the issuance of the restraining order is discretionary and is reserved for extraordinary cases where irreparable damage would occur and no adequate legal remedy is available. Second, some of the same considerations involved in issuing an injunction apply in the issuance of a restraining order. Thus, a Court should consider (1) whether the underlying legal contentions of the plaintiff are reasonably free of doubt; (2) damage and inconvenience to the public which will result from issuance of the order; and (3) the official identity and good faith of the defendants whose action is sought to be restrained.

■ The underlying legal contentions of the plaintiff are not reasonably free of doubt.

The hardship and inconvenience to the public which would result from the issuance of a restraining order in this case far outweigh the loss and damage, if any, which would be sustained by the plaintiff and its members pending hearing of the application for temporary injunction. (The value of the right to strike, to picket, and to bargain collectively while refusing to work is not underestimated. However, the public injury is considered to be vastly greater.) This strike has seriously interfered with the life of this city, as proclaimed by the Governor.

■ It is well established by law that a Federal Court should be loathe, summarily and pending trial, to issue an order commanding the Governor of a sovereign state and his agents to cease enforcing a state law. If such action is to be taken, it should be reserved for a case reasonably free from doubt, and when necessary to prevent great and irreparable injury, far greater than the injury which would result from issuance of the restraining order. This is not

such a case. This case is governed by the language of Mr. Justice Holmes in Massachusetts State Grange v. Benton, 272 U.S. 525, 47 S.Ct. 189, 71 L.Ed. 387, 1. c. 390–1, wherein he said:

"The important rule, which we desire to emphasize, that no injunction ought to issue against officers of a State, clothed with an authority to enforce the law in question, unless in a case reasonably free from doubt and when necessary to prevent great and irreparable injury."

The case cited by the plaintiff where a restraining order was issued against the Governor of New Jersey to enjoin enforcement of the New Jersey statute on labor disputes, recognizes in the opinion an exception in the presence of grave and immediate danger to the community involved. Traffic Telephone Workers Federation of N. J. v. Driscoll (D.N.J.) 71 F.Supp. 681. Furthermore, the Three-Judge Court convened in that case refused to issue the injunction. See the same case in D.C., 72 F.Supp. 499, appeal dismissed 332 U.S. 833, 68 S.Ct. 221, 92 L.Ed. 406.

The Governor's proclamation of danger to this community must be given great weight. For the reasons given, it is

ORDERED that the application for a temporary restraining order be, and the same is hereby, denied.

### REQUEST FOR THREE-JUDGE COURT

The complaint in this action raises specific and serious constitutional questions, as well as the question of pre-emption by the Federal law. Under such circumstances the plaintiff is entitled to a hearing on the complaint. Such a complaint may not be heard by a single District Judge. Therefore, it is my opinion that a Three-Judge Court should be convened. I do not believe that this issue is controlled by General Electric Company v. Callahan (C.A.1) 294 F.2d 60.

The convening of a Three-Judge Court was provided by Congress to protect the State against individual action of a District Judge interfering with the enforcement of State statutes. No relief could be afforded the plaintiff in this case, if it should prove to have a right to relief, except by a District Court of three judges. Therefore, it is

ORDERED that the application for convening a Three-Judge Court be, and the same is hereby, sustained. Appropriate action will be taken to implement this order.