Roland T. VARNEY, Plaintiff,

v.

Caspar WEINBERGER, Secretary of Health, Education and Welfare, Defendant.

No. 1585.

United States District Court, E. D. Kentucky, Pikeville Division.

March 27, 1974.

---

Roland Case, Kelsey E. Friend Law Firm, Pikeville, Ky., for plaintiff.

Eugene E. Siler, Jr., U. S. Atty., Robert M. Murphy, Jr., Asst. U. S. Atty., Lexington, Ky., for defendant.

MEMORANDUM OPINION

HERMANSDORFER, District Judge.

This action seeks by Summary Judgment proceedings to review a final decision of the Secretary of Health, Education and Welfare terminating the benefits awarded the plaintiff under 42 U.S. C. §§ 416(i), 423. Jurisdiction is alleged and found under 42 U.S.C. § 405(g).

The plaintiff contends that the Secretary's decision of August 1, 1970 to terminate the plaintiff's benefits was erroneous for two reasons. His initial challenge is directed at the lack of notice and a hearing prior to termination of his disability benefits. His second proposition is that the decision to terminate was not supported by substantial evidence. Each contention will be separately considered.

The Secretary acting on the basis of a determination of the Kentucky state agency that Mr. Varney's entitlement to disability benefits had terminated discontinued Mr. Varney's benefits without a prior hearing. This action was affirmed by the Hearing Examiner after a full hearing and became the final decision of the Secretary when the Appeals Council declined to review the Hearing Examiner's decision.

The plaintiff contends, relying upon Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), that the Secretary's action in terminating disability benefits without a prior hearing

denied him his right of due process.[1] The precise issue was presented to the Supreme Court in Richardson v. Wright, 405 U.S. 208, 92 S.Ct. 788, 31 L.Ed.2d 151 (1972). However, the Court declined to reach a decision on the merits but, instead, remanded the cause to the Secretary for reconsideration in view of then recently adopted regulations of the Department of Health, Education and Welfare.[2] Richardson v. Wright, Id. at 209, 92 S.Ct. 788.

The Secretary does not concede a violation of due process but contends that, if any such violation occurred, the issue became moot when the plaintiff was afforded a full and fair evidentiary hearing before the Hearing Examiner. See: 20 C.F.R. §§ 404.917–404.941.

■ The remedy fashioned by the Court in Richardson v. Wright, supra, would be redundant in the proceedings here. There the claimant had never been afforded the opportunity for a due process hearing on the merits of his cause. The record herein clearly indicates a full and fair hearing was afforded the plaintiff on May 11, 1972. If the Court were to comply with the plaintiff's desires, the administrative decision on remand would not likely change. He could not possibly receive a more extensive adversary hearing than has been afforded him previously. In fact, any hearing on remand would be greatly reduced in scope. Richardson v. Wright, supra at 209–211, 92 S.Ct. 788.

■ It has long been the settled rule that federal courts are without power to decide questions that cannot affect the rights of the litigants before them. Oil Workers Unions v. Missouri, 361 U.S. 363, 367, 80 S.Ct. 391, 4 L.Ed.2d 373 (1960). To be cognizable in a federal court, a suit must be definite and concrete, touching on the legal relations of parties having adverse legal interest. It must be a real and substantial controversy where relief of a specific nature can be granted by a decree conclusive in nature. Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240–241, 57 S.Ct. 461, 81 L.Ed. 617 (1937). It would serve no purpose for the Court to order the defendant to grant the plaintiff a hearing as he has already been afforded that opportunity. Although a declaration of his rights might be undertaken, this would merely be a hypothetical ruling between these parties, since the plaintiff stood alone in this litigation and not as a representative of any class of individuals. The nature of the cause itself, a single individual alleging infringement of his right to due process, does not make this dispute one of a general public interest requiring a decision even if many attributes of mootness exist. Caldwell v. Craighead, 432 F.2d 231, 218 (6th Cir. 1970). It is concluded, therefore, that Mr. Varney's due process claim raised in this action has become mooted and there is no need to reach the merits of the same.

The plaintiff further asserts that if the procedures now in force would have been in existence at the time his benefits were terminated, he would have been entitled to receive benefits until he was afforded the requisite due process hearing. The Court reserves its ruling on that question pending a resolution of the merits of the plaintiff's cause.

The plaintiff is a male, fifty-one (51) years of age, with a sixth grade education. His occupational history reflects employment primarily as a coal miner.

The record, as it is presently constituted, contains inter alia three (3) reports of Dr. Frank Varney. In the first of those reports, Dr. Varney stated that

---

1. The plaintiff has neither plead nor raised a question requiring the convening of a three-judge district court pursuant to 28 U.S.C. § 2282. See: Anderson v. Richardson, 454 F. 2d 596, 598–599 (6th Cir. 1972).

2. The new provisions were issued as amendments to the Disability Insurance State Manual (DISM) on December 27, 1971. DISM § 353.6A now requires state agencies to inform a beneficiary of a proposed cessation of benefits, and the reasons therefor, before it requests authorization to terminate benefits.

the plaintiff was unable to work because of his left leg fracture (Tr. 110). In the other two reports, Dr. Varney concluded that the plaintiff was totally and permanently disabled due to the residuals of the fracture and other diseases (Tr. 121 and 122). Such statements, upon first impression, have been held to satisfy the plaintiff's burden. The usual rule which governs a situation as this was stated in Branham v. Gardner, 383 F.2d 614, 634 (6th Cir. 1967) where the Court stated:

"The evidence of physicians who have been treating the patient over a long period of time and who state that he is totally incapacitated, is substantial evidence as compared with the evidence of physicians who have examined the plaintiff on only one occasion, and whose reports are inconclusive, fragmentary, uncertain and not contradictions of the unqualified evidence that the patient is totally and permanently disabled. Where expert medical opinion as to disability and inability to engage in any substantial, gainful employment is not controverted by substantial evidence to the contrary, the adverse decision of the Secretary must be reversed." (Citations omitted)

Dr. Varney's report dated May 9, 1972 reaches the following conclusion:

"It has been determined by my examinations that Mr. Varney is no longer able to return to his job as an underground coal miner and that this is totally and permanently so. *I am not aware of any other job in the area that Mr. Varney is qualified to perform from the training and education that he now possesses, therefore I would consider his* (sic) *to be disabled from all work."* (Emphasis supplied) (Tr. 122).

■ Dr. Varney's report of May 9, 1972 clearly is not an "unqualified" statement. Although he found the plaintiff to be permanently disabled as far as coal mining is concerned, he qualified his statement as to the plaintiff's

ability to perform all other types of work. That statement invades the province of the Secretary and expresses an opinion that goes far beyond the scope of Dr. Varney's medical expertise. Richardson v. Perales, 402 U.S. 389, 404, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).

■ The Secretary correctly found the plaintiff could not perform the duties associated with those of a coal miner. That finding clearly satisfies the plaintiff's burden and shifts the burden of going forward with the evidence to the Secretary who must prove the plaintiff possesses the residual capacity to engage in other substantial gainful activity. Garrett v. Finch, 436 F.2d 15, 18 (6th Cir. 1970); Vaughn v. Finch, 431 F.2d 997, 998 (6th Cir. 1970); Jenkins v. Gardner, 430 F.2d 243, 245–246 (6th Cir. 1970).

In support of his proposition that the plaintiff possesses the residual capacity to perform light work, the Secretary has offered the reports of two (2) physicians, Drs. Charles Rutledge and Harold Redd. Dr. Rutledge noted that the plaintiff's fracture was only slightly visable upon x-ray but that healing was advanced. Dr. Rutledge also noted that the plaintiff stated he could perform light work but that the company doctor would not release him nor would the company provide such work. The plaintiff at that time was afraid of losing his union rights and the possibility of a miner's pension (Tr. 107–108). Dr. Redd found by x-ray that the plaintiff's fracture was well healed and in good alignment. The only apparent residuals noted by Dr. Redd were atrophy of the muscles in the area of the fracture and a slight limitation of the flexion of the left knee. Dr. Redd related the plaintiff's comments as to the pain the old fracture caused, but stated that such pain was not unusual for an injury of the type suffered by the plaintiff and that the plaintiff stated that he was taking no medication to relieve the pain (Tr. 112–114).

The plaintiff testified at the hearing on May 11, 1972 that he could walk dis-

tances up to one mile, that he drove a car and spent most of his time sitting and watching television (Tr. 36–37).

At the hearing a vocational expert, Ms. Madeline F. Dooley, testified. It was her opinion based upon the plaintiff's age, his education, his work experience and assuming, as the Hearing Examiner requested, that the plaintiff had a somewhat stiff left leg which became painful upon prolonged sitting, that the plaintiff could easily transfer to and perform in another field of work which was less arduous than his previous work. She listed an extensive number of jobs he could perform and stated that these jobs existed not only where the plaintiff resided but also in the national economy. Upon a further assumption that the plaintiff's impairments were as severe as he claimed, the expert was of the opinion that he could still perform some of the jobs and she cited several more which would be classified as sedentary (Tr. 57–65).

The Secretary has the power to determine whether a claimant's disability has terminated. Under the provision of 42 U.S.C. § 405(g), this Court's review of that determination is limited to ascertaining whether it was supported by substantial evidence. Myers v. Richardson, 471 F.2d 1265, 1267 (6th Cir. 1972). For the purpose of such a limited review the term "substantial evidence" has been defined as:

"... 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)." Richardson v. Perales, *supra*, 402 U.S. at 401, 91 S.Ct. at 1427.

The Secretary's decision shall be affirmed for the reasons which follow:

■■■■ (1) Dr. Varney's three reports do not meet the standard prescribed under 42 U.S.C. § 423(d)(3). For an impairment to be compensable under the 1967 Amendments to the Act, the impairment must result from abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. Floyd v. Finch, 441 F.2d 73, 75 (6th Cir. 1971). A close scrutiny of each report does not reveal the rendition of the slightest fact upon which the physician based his conclusion. In fact, in his first report he indicated that the plaintiff could return to work when his fracture healed and function returned (Tr. 110). The report submitted by Dr. Redd clearly reveals that the fracture had healed and that it caused little, if any, functional limitation (Tr. 114).

(2) As previously stated above, Dr. Varney's finding of total disability was outside the realm of his medical expertise. Similarly, the standard used by Dr. Varney was erroneously applied. Under the provisions of 42 U.S.C. § 423(d)(2), the plaintiff's mental or physical impairments must be of such severity that:

"... he is not only unable to perform his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists *in the national economy, regardless of whether such work exists in the immediate area in which he lives* ...." (Emphasis supplied).

(3) The plaintiff's own testimony and the statements attributed to him by Dr. Rutledge indicate that his impairment does not satisfy the standard of disability. Although the plaintiff and his attorney were afforded the opportunity to review all medical exhibits (Tr. 30) they chose not to challenge the accuracy or veracity of the plaintiff's statements as related by Dr. Rutledge. Those statements were given great weight by the Secretary (Tr. 15).

(4) The vocational expert's testimony establishes the existence of work activities the plaintiff was capable of performing even upon an assumption that his impairments were as severe as he claimed.

Consequently, the Secretary has demonstrated that despite the plaintiff's impairments there were jobs available to the plaintiff that he was capable of performing. 42 U.S.C. § 423(d)(2).

Returning to the remaining issue—should the plaintiff be allowed disability benefits from the date of termination until the date of his due process hearing—the Court can find no basis for an affirmative answer. Unlike claimed welfare payments, if the plaintiff had, in the course of his administrative and judicial review proceedings, prevailed, he would have been entitled to retroactive benefits to the date of any unlawful termination thereof. No such retroactivity applies to welfare payments. Where termination was justified and in accordance with the law, the plaintiff cannot be found to be entitled to any benefits.

An order in conformity with this Memorandum Opinion will this day be entered herein.