Larry FLYNT, et al., Plaintiffs,

v.

Caspar W. WEINBERGER, et al., Defendants.

Civ. A. No. 83–3191.

United States District Court, District of Columbia.

June 21, 1984.

H. Richard Mayberry, Washington, D.C., for plaintiffs.

Vincent M. Garvey, Atty., Dept. of Justice, Washington, D.C., for defendants.

## MEMORANDUM

GASCH, District Judge.

In this case plaintiffs are challenging the decision to prohibit press coverage of the initial stages of the United States' military intervention in Grenada. Defendants have moved the Court to dismiss this challenge as moot. For the reasons discussed below, this motion is granted.

On October 25, 1983 the United States began a military intervention on the island nation of Grenada. The purpose of this military action according to the Reagan administration was "to protect U.S. and foreign citizens in Grenada and to assist in stabilizing the situation in [that] country." It is undisputed that representatives of the press were prohibited from accompanying the invasion forces in the initial landings on the island and that members of the press who attempted to make their own way to the island were prevented from reporting news of the invasion. In short, in its initial stages, a total news blackout of the military action was imposed and the only information available to the public about the events occurring on Grenada was issued by official United States government sources.

Beginning on October 27, 1983, the press ban was lifted and a limited number of press representatives were transported by military aircraft to Grenada.[1] When Grenada's civilian airport reopened on November 7, 1983, all restrictions on travel to the island were eliminated and, consequently, members of the press had unlimited access to it. This remains the situation today.

The United States' military intervention on Grenada is now over. At the present time only a small detachment of 300 United States military personnel remain on the island. This United States military presence, consists of military police, logistics, engineering, medical and other support personnel. More importantly, the press now has unlimited freedom to report about events in Grenada, including those involving the United States' military presence there.

Plaintiffs' complaint in this action seeks only declaratory and injunctive relief.[2] They seek an injunction prohibiting defendants from "preventing or otherwise hindering Plaintiffs from sending reporters to the sovereign nation of Grenada to gather news ..." and they seek a declaration that "the course of conduct engaged in by Defendants, ... in preventing Plaintiffs, or otherwise hindering Plaintiffs', efforts to send reporters to the sovereign nation of Grenada for the purpose of gathering news is in violation of the Constitution [sic] laws, and treaties of the United States...."

■ On its face, plaintiffs' claim for injunctive relief appears to be moot. There is no relief the Court can give plaintiffs that they do not already enjoy. At least since November 7, 1983, plaintiffs have had unlimited access to Grenada and there is no evidence that defendants have engaged in any acts since that time designed to "[prevent] or otherwise [hinder] Plaintiffs from sending reporters to ... Grenada." Nor is there any real possibility that defendants will engage in such acts in the future because the military action that precipitated the temporary press ban on Grenada is long since over.

■ The Supreme Court has stated that

---

**1.** Initially, the press representatives who were transported to Grenada by military transport were chosen by the traditional pooling method. The United States government determined what categories of news media should be represented and the reporters themselves chose who from among each category would make the trip. Plaintiffs have not challenged this procedure.

**2.** Plaintiffs imply in their supplemental papers that there remains a live case or controversy because they are also seeking money damages. A claim for money damages is not contained in the complaint, however, and thus, will not be considered by the Court. In any case, the Court doubts that a claim for money damages would even be viable because the amount of damages, if any, could only be the subject of sheer speculation.

[i]n general a case becomes moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."

*Murphy v. Hunt*, 455 U.S. 478, 481, 102 S.Ct. 1181, 1182–1183, 71 L.Ed.2d 353 (1982), quoting *United States Parole Commission v. Geraghty*, 445 U.S. 388, 390, 100 S.Ct. 1202, 1205, 63 L.Ed.2d 479 (1980). Limited exceptions to this general rule have been recognized where (i) the controversy is one that is "capable of repetition, yet evading review," *Weinstein v. Bradford*, 423 U.S. 147, 148, 96 S.Ct. 347, 348, 46 L.Ed.2d 350 (1975), or (ii) the defendant has voluntarily ceased the challenged activity, *United States v. W.T. Grant Co.*, 345 U.S. 629, 632, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953).

■ This case falls outside the first exception. The "capable of repetition, yet evading review doctrine" is limited to the situation where:

(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and

(2) there [is] a reasonable expectation that the same complaining party would be subjected to the same action again.

*Murphy v. Hunt*, 455 U.S. at 482, 102 S.Ct. at 1183, quoting *Weinstein v. Bradford*, 423 U.S. at 149, 96 S.Ct. at 348. Although the activity challenged by plaintiffs did "not last long enough for complete judicial review" of the controversy it created, *Super Tire Engineering Co. v. McCorkle*, 416 U.S. 115, 126, 94 S.Ct. 1694, 1700, 40 L.Ed.2d 1 (1974), there is no "reasonable expectation" that the controversy will recur. The Supreme Court has required not merely a "physical or theoretical possibility," *Murphy v. Hunt*, 455 U.S. at 482, 102 S.Ct. at 1183, but a "demonstrated probability" that it will recur. *Weinstein v. Bradford*, 423 U.S. at 149, 96 S.Ct. at 348. No such probability exists in this case.

The invasion of Grenada was, like any invasion or military intervention, a unique event. Its occurrence required a combination of geopolitical circumstances not likely to be repeated. In addition, it required a discretionary decision by the President of the United States as Commander-in-Chief to commit United States forces. The decision to impose a temporary press ban was also a discretionary one. It was made by the military commander in the field of operations because the safety of press representatives could not be guaranteed and in order to ensure that secrecy was maintained, thereby protecting the safety of United States troops and promoting the success of the military operation. As the supplemental papers submitted by the parties at the Court's request demonstrate, a press ban has not often been resorted to in military actions involving United States troops. In fact, this is apparently the first time that a decision to impose one has been objected to, or at least the first time that these plaintiffs have objected to such a decision. Given the discretionary nature of the decision to impose a press ban and the infrequency with which such a decision has been implemented, the Court is unable to detect a "demonstrated probability" that a press ban to which plaintiffs will object will be imposed in the foreseeable future.

■ The second exception to the mootness doctrine must also be considered, however, because it was defendants' removal of the press ban that created the mootness issue. Ordinarily, voluntary cessation of allegedly illegal conduct does not deprive a court of the power to hear a case unless "it can be said with assurance that 'there is no reasonable expectation ...' that the alleged violation will recur ... and ... interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *County of Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979) (citations omitted). Application of these tests does not change the Court's conclusion that plaintiffs' claim for injunctive relief is moot. As discussed, there is no "reasonable expectation" that the alleged violation will recur. Moreover, because plaintiffs have had unlimited access to Grenada since November 7, 1983, they have been able to report fully, albeit belatedly, concerning the military action on

Grenada. An injunction by this Court could do no more to eradicate the effects of the temporary press ban.

■ Even if this Court were of the opinion that plaintiffs' claim for injunctive relief continued to present a live controversy and that the temporary press ban had violated plaintiffs' constitutional rights, which the Court doubts, it would exercise its equitable discretion and decline to enter an injunction restraining the government from restricting press access to future United States military operations. *See Laird v. Tatum*, 408 U.S. 1, 11–16, 92 S.Ct. 2318, 2324–2327, 33 L.Ed.2d 154 (1972); *Halkin v. Helms*, 690 F.2d 977, 1005–06 (D.C.Cir. 1982). An injunction such as the one plaintiffs seek would limit the range of options available to the commanders in the field in the future, possibly jeopardizing the success of military operations and the lives of military personnel and thereby gravely damaging the national interest. As the courts have repeatedly recognized, a showing by a plaintiff that "he personally faces" a specific, imminent threat of irreparable harm is required before "the conduct of vital governmental functions which require the exercise of discretion in a myriad of unpredictable circumstances" will be enjoined. *Halkin v. Helms*, 690 F.2d at 1005–06. *See Laird v. Tatum*, 408 U.S. at 15, 92 S.Ct. at 2326; *Reporters Committee for Freedom of the Press v. American Telephone & Telegraph Co.*, 593 F.2d 1030, 1067 (D.C.Cir.1978), *cert. denied*, 440 U.S. 949, 99 S.Ct. 1431, 59 L.Ed.2d 639 (1979); *Exxon Corp. v. F.T.C.*, 589 F.2d 582, 589 n. 14 (D.C.Cir.1978), *cert. denied*, 441 U.S. 943, 99 S.Ct. 2160, 60 L.Ed.2d 1044 (1979). No such showing can possibly be made in this case by these plaintiffs.

Plaintiffs' request for declaratory relief presents a slightly different question, but the Court concludes that it is also moot under the principles enunciated by the United States Court of Appeals for the District of Columbia Circuit in *Halkin v. Helms*, 690 F.2d at 1006–09. In the instant case, plaintiffs argue that their claim for declaratory relief is not moot because de-

fendants continue to claim the right to impose a press ban under certain circumstances during military operations involving United States forces. A nearly identical argument was raised unsuccessfully in *Halkin v. Helms*. In that case it was argued that "the fact that the executive branch has not renounced all claims of power under the Constitution to conduct [the challenged (surveillance) activity] in the future compels the conclusion that a live controversy still exists." 690 F.2d at 1007. The *Halkin* Court rejected this argument, relying on a line of Supreme Court cases beginning with *Harris v. Battle*, 348 U.S. 803, 75 S.Ct. 34, 99 L.Ed. 634 (1954), and including *Oil Workers Union v. Missouri*, 361 U.S. 363, 80 S.Ct. 391, 4 L.Ed.2d 373 (1960) and *Super Tire Engineering Co. v. McCorkle*, 416 U.S. 115, 94 S.Ct. 1694, 40 L.Ed.2d 1 (1974).

In *Halkin v. Helms*, like this case, the challenged activity was voluntarily terminated by the government. 690 F.2d at 1005. Nevertheless, the Court held that the claim for declaratory relief was moot because the challenged surveillance activity was *necessarily contingent upon the exercise of executive discretion. Id.* at 1009. The *Halkin* Court concluded that a claim for declaratory relief in cases where the challenged activity has ceased is only viable if the challenged activity resulted from a "fixed and definite" government policy that was "essentially carved in stone and self-executing in nature [and] 'not contingent upon executive discretion'." *Id.*, quoting *Super Tire Engineering Co. v. McCorkle*, 416 U.S. at 124, 94 S.Ct. at 1699. This holding was based on the Court's reading of the majority opinion in *Super Tire Engineering Co. v. McCorkle* "as marking the outermost boundaries of declaratory judgment actions satisfying the case-or-controversy requirement," *id.* at 1009 n. 119, and the "crucial" fact that in the *Super Tire* case "the source of complaint was 'a fixed policy directive' of the government." *Id.* at 1009.

The justiciability of plaintiff's claim for declaratory relief is controlled by *Halkin v. Helms*. The decision whether or not to

impose a press ban during military operations and the nature and extent of such a ban if imposed are matters that necessarily must be left to the discretion of the commander in the field. There is nothing in the record suggesting that the government has formulated a fixed policy of excluding the press from military operations—even during the initial stages of island invasions. A decision whether or not to impose a press ban is one that depends on the degree of secrecy required, force size, the equipment involved, and the geography of the field of operations. Moreover, the scope of press exclusion, if any, will differ somewhat in every case. Under such circumstances, where the decision being scrutinized is committed to the broad discretion of the commander in the field and is contingent upon a wide range of factors determinable only with reference to the particular military operation being undertaken, a declaratory judgment would be futile, and perhaps even dangerous, because of its limited value as a guide for future conduct. Thus, the Court concludes that plaintiffs' request for declaratory relief is also moot.

CONCLUSION

Defendants' motion to dismiss the complaint is granted and this action is dismissed with prejudice.