No. 83–866.   BOSTON FIREFIGHTERS UNION, LOCAL 718 *v.* BOSTON CHAPTER, NAACP, INC., ET AL.; and
No. 83–885.   BOSTON POLICE PATROLMEN'S ASSN., INC. *v.* CASTRO ET AL.   C. A. 1st Cir.   Certiorari granted, judgment vacated, and cases remanded for further consideration in light of *Firefighters* v. *Stotts*, 467 U. S. 561 (1984).   JUSTICE MARSHALL took no part in the consideration or decision of these cases.   Reported below: 716 F. 2d 931.

JUSTICE BLACKMUN, with whom JUSTICE BRENNAN and JUSTICE STEVENS join, dissenting.

The Court today logically applies yesterday's illogic.   I cannot disagree with the Court's conclusion that the mootness issue in these cases is similar to some portions of the mootness issue in *Firefighters* v. *Stotts*, 467 U. S. 561 (1984).   I therefore do not dispute that there is reason to think that the decision in *Stotts* bears on the Court of Appeals' conclusion that these cases are moot.   In my view, however, the portions of *Stotts* relevant to the mootness issue in this case are demonstrably wrong; they depart sharply from our precedents and ignore the jurisdictional limits imposed by the "case or controversy" requirements of Article

III of the Constitution. The sooner they are forgotten, the earlier that the longstanding principles governing mootness doctrine can be resurrected. The Court of Appeals disposed of these cases in accordance with those principles, and I would let its ruling stand.

I

The controversy in these cases has remarkable similarity to the controversy in *Stotts*. It began when the city of Boston announced a plan to conduct a reduction in force as a response to its fiscal difficulties. The proposed reductions included layoffs in the Police and Fire Departments, both of which were operating under consent decrees to remedy past discrimination. Those decrees required the Departments to engage in preferential hiring of members of minority groups in order to raise the representation of minorities in the Departments to the level in the surrounding work force. The proposed layoffs were to be conducted on a "last-hired, first-fired" basis, and would have affected many minority persons hired under the consent decree.

Minority officers brought suit in federal court to enjoin the layoffs, and the court concluded that seniority-based layoffs would impede its efforts to remedy the past discrimination. Accordingly, the District Court enjoined the Police and Fire Departments from conducting layoffs in a manner that would reduce the percentage of minorities employed in those Departments. *Castro v. Beecher*, 522 F. Supp. 873 (Mass. 1981). As a consequence, some nonminority employees were laid off ahead of minorities with less seniority. The State Civil Service Commission and the unions representing affected nonminority persons challenged the orders of the District Court. The Court of Appeals, however, affirmed. *Boston Chapter, NAACP v. Beecher*, 679 F. 2d 965 (CA1 1982).

Following the Court of Appeals' decision and this Court's grant of certiorari to review it, 459 U. S. 967 (1982), the Massachusetts Legislature enacted the Tregor Act to address the situation. 1982 Mass. Acts, ch. 190. That legislation provided the city of Boston with new revenues, required reinstatement of all police and firefighters laid off during the reductions in force, secured those personnel against future layoffs for fiscal reasons, and required the maintenance of minimum-staffing levels in the Police and Fire Departments through June 30, 1983. This legislative action terminated all layoffs, and greatly diminished the risk that

future layoffs might take place. Respondents argued before this Court that the legislation rendered the controversy in these cases moot, and deprived the Court of jurisdiction to decide them. Because the legislation's effects raised serious questions concerning this Court's jurisdiction, we vacated the Court of Appeals' judgment and remanded the case for consideration of mootness in light of the Tregor Act. *Firefighters* v. *Boston Chapter, NAACP*, 461 U. S. 477 (1983).

On remand, the Court of Appeals held that the Tregor Act's mandatory reinstatement of all laid-off police and firefighters, and its requirement of minimum-staffing levels, removed the legally cognizable stake that the litigants had in the suits before the layoffs ended. *Boston Chapter, NAACP* v. *Beecher*, 716 F. 2d 931 (CA1 1983). The court also rejected the claim that the controversy presented by the case was "capable of repetition yet evading review." If future layoffs occurred despite the Tregor Act, the court explained, there was no reason to assume that the state legislature would once again intervene before resolution by this Court. Finally, the court rejected the claim that these cases remain live because the District Court order interferes with backpay claims filed with the State Civil Service Commission by the affected nonminority workers. The Court of Appeals explained that those issues properly were to be resolved in the administrative proceedings before the Commission.

## II

Because the Tregor Act is a Massachusetts statute, and *Stotts* involved layoffs in Tennessee, this Court's decision in *Stotts* obviously sheds no light on whether the Court of Appeals properly assessed the Tregor Act's effect on the likelihood that future layoffs will occur in the Boston Police and Fire Departments. This Court's decision in *Stotts* bears only on the question whether the backpay claims of individuals affected by the Boston layoffs create a controversy sufficient to provide a federal court with jurisdiction over these cases. The nature of those claims and the most basic principles of Article III make clear that they do not.

The elements of Article III's "case or controversy" requirement are well established. Among them is the requirement that parties before the Court have legally cognizable interests that are adverse to each other. Such adversity of interests must exist "at stages of appellate or certiorari review, and not simply at the date

the action is initiated." *Roe* v. *Wade*, 410 U. S. 113, 125 (1973). In addition, a complaining party must show "an injury to himself that is likely to be redressed by a favorable decision." *Simon* v. *Eastern Kentucky Welfare Rights Org.*, 426 U. S. 26, 38 (1976). A ruling that does not provide any relief to the prevailing party ignores the duty of federal courts "'to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.'" *Oil Workers* v. *Missouri*, 361 U. S. 363, 367 (1960), quoting *Mills* v. *Green*, 159 U. S. 651, 653 (1895).

When a case becomes moot while pending review, it is the "duty of the appellate court" to vacate the judgment below and remand with directions to dismiss. *Duke Power Co.* v. *Greenwood County*, 299 U. S. 259, 267 (1936). "That procedure clears the path for future relitigation of the issues between the parties and eliminates a judgment, review of which was prevented through happenstance." *United States* v. *Munsingwear, Inc.*, 340 U. S. 36, 40 (1950). This disposition serves the purpose of preserving the rights of all parties to the controversy in any future litigation that might arise presenting similar issues.

Application of these principles makes it readily apparent that backpay claims filed against the city do not keep these cases alive and that the Court of Appeals correctly found them to be moot. First, claims for backpay simply are not a part of these cases. Petitioners do not seek backpay in them, and a decision of these cases will not provide backpay to anyone. It may be true, as the parties concede, that backpay claims are being litigated, or already have been decided, in administrative proceedings before the State Civil Service Commission. But the status of any such litigation is irrelevant here, for it has always been the rule that a case is not kept alive because of issues that might arise in other proceedings in another forum. A federal court's jurisdiction is determined by the conditions of the case before it. *Oil Workers* v. *Missouri*, 361 U. S., at 370 ("'Our power only extends over and is limited by the conditions of the case now before us,'" quoting *American Book Co.* v. *Kansas*, 193 U. S. 49, 52 (1904)). Because backpay is not an issue in these cases, it cannot provide a jurisdictional basis for these suits.

Second, it is apparent that the minority officers have no stake in the resolution of backpay claims of others filed with the State Civil

Service Commission. If backpay is awarded, it will come from the city, not from the minority officers, who are not parties to those proceedings, and who have no interest in whether such backpay is awarded. The possible dispute over backpay therefore does not create a controversy with respect to the minority officers who are respondents in these cases.

The Court of Appeals based its conclusion that these cases are moot on precisely these considerations. In rejecting the claim that backpay issues keep these cases live, the court explained:

"According to the established practice of the federal courts, when a case is found moot, the district court's judgment will be vacated. Thus even assuming . . . that the district court's order directly inhibits the state Civil Service Commission respecting the backpay claims, it will no longer do so. To be sure, a definitive ruling on the constitutionality of the district court's past order might facilitate the Civil Service Commission's resolution of the back pay claims. But such a ruling now—rendered in the absence of a present case or controversy in this proceeding—would amount to no more than an advisory opinion. The federal courts are forbidden by Article III of the Constitution from giving advisory opinions. [Petitioners'] interest in the resolution of this case shows that the issue here may retain some collateral vitality, but to avoid mootness a case must present both live issues and parties with legally cognizable interests. Plaintiffs now lack the 'personal stake' necessary to keep alive the controversy which engendered this proceeding. The Civil Service Commission must therefore be left to decide the back pay claims under the governing state law without an advisory resolution of the constitutional issue by the federal courts." 716 F. 2d, at 933 (citations omitted).

Nothing in this Court's opinion in *Stotts* explains why these principles are not fully applicable here. It is true that *Stotts* involved ancillary backpay issues somewhat similar to those in these cases, but the Court's opinion never explained why vacating the District Court's orders would not have cleared the path for full litigation of the backpay issues in an appropriate proceeding involving adverse parties. Instead, this Court's opinion in *Stotts* proceeded from the misconception that even if the District Court's orders in those cases were vacated, they still might control

backpay claims. 467 U. S., at 571. Because a vacated judgment, by definition, cannot have any preclusive effect in subsequent litigation, the portion of the Court's decision in *Stotts* that assumes the contrary is tautologically incorrect.

In addition to being controlled by longstanding principles of Article III, these cases attest to the underlying wisdom of those tenets. Petitioners do not suggest that they are entitled to backpay under Title VII of the Civil Rights Act of 1964. Any backpay claims that may have arisen as a result of the Boston layoffs presumably are controlled by state rather than federal law. We cannot claim familiarity with the standards governing such claims, and hence we are in no position to determine how the federal questions formerly presented by these cases are relevant to the claims for backpay under state law. It seems likely, however, that the issue raised in the civil service proceedings is whether the layoffs of the nonminority persons were "justified" under state law. See Mass. Gen. Laws Ann., ch. 31, § 43 (West Supp. 1984–1985). To the extent that application of this standard might involve consideration of whether the layoffs were pursuant to a federal-court order, further review of these cases would shed no new light on that question. There is no dispute over whether the layoffs were conducted pursuant to outstanding federal-court orders that were validly entered and that the city had a legal duty to obey. See *Walker* v. *City of Birmingham*, 388 U. S. 307, 314 (1967) (court order entered by court with subject-matter and personal jurisdiction over case gives rise to a plain duty to obey until order is stayed, vacated, or reversed). If the Fire and Police Departments can defend backpay claims on the ground that the layoff of nonminority persons was justified because of the city's duty to obey a federal-court injunction, that defense presumably would exist regardless of whether the injunction is overturned on appeal. In any event, it is precisely because the issue of backpay is not being litigated in these cases, and hence the relevance of the District Court's injunction is unclear, that it is improper for a federal court to use those claims as a basis for its jurisdiction over these cases. If resolution of backpay claims under state law ultimately does involve a federal question, that question would be reviewable when presented as part of a decision resolving the backpay claims.

The Court's treatment of these cases is especially incongruous given that just last Term the Court implicitly rejected the view that backpay claims kept these cases live. When this Court

1212

vacated the judgment in these cases and remanded them to the Court of Appeals, the Court expressly based its decision on the possibility that the Tregor Act rendered the cases moot. 461 U. S., at 479. That Act affected only the prospective aspects of the layoffs; it ordered reinstatement of laid-off employees and protected them from similar layoffs in the future. There was no suggestion, either then or now, that the Tregor Act had any effect whatsoever on backpay claims stemming from layoffs in the past. Thus, the backpay claims that petitioners now assert as keeping these cases alive were in the same posture last Term. Had this Court then believed that backpay issues created a controversy in these cases, there would have been no reason to remand them to the Court of Appeals for consideration of the Tregor Act. By remanding the cases, this Court implicitly expressed its view that the backpay claims did not save the cases from being moot. The Court offers no explanation for taking a contrary position now.

III

Because the Court of Appeals properly stayed within the scope of its Article III powers, I would simply deny the petitions for certiorari in these cases. If the Court believes that the Court of Appeals improperly applied the principles of Article III, the Court has a duty to explain why. It is incongruous for the Court simply to remand for further consideration of the mootness issue "in light of" Stotts, because the Court's opinion in Stotts ignored the principles that the Court of Appeals relied upon here. Rather than shedding any light on the mootness issue in these cases, Stotts casts a murky shadow over well-established Article III principles.